Judge Buckner
delivered the opinion of the Court.
On the 14th day of April, 1814, James Twyman the appellee, and W. Henry, executed their «oteto John Wallace, binding themselves to pay to *458 ono year, $446 50. Upon which the executor and executrix of Wallace, (he having died,) instituted suit, and recovered against Twyman, the suit having been abated as to Henry, who had died. The debt was replevied by the appellee, with Joseph James, as tiis surety.
The appellee then filed his bill in chancery, against the executor and executrix, alleging, that in April, 1811, he had borrowed of their testator, $300, for one year, at the usurous interest of twelve percent, per annum; and in pursuance of the agreement, had executed a note with said Henry, as his surety, payable one year after date, for $>336; that, when that note became due, Wallace agreed to indulge for another year, upon his executing a new note for the whole amount, with interest thereon, at the rate of ten per cent, per annumn, which he did with the same surety; that when this last note became due, it was given up, and a third note executed, payable one year after date, with the same surety, including an ■usurious interest, at same rate, on the entire sjpn stipulated to be. paid by the second note; that when the third note was due, a calculation Was again made, by adding the same interest on the whole sum for one year, and a fourth note was executed, with the same surety, for $446 50, payable on the 14th of April, 1815. He says, tint after this, the note was not renewed, but said Wallace still agreed to indulge him, by permitting the note to stand, carrying six per centum per annum, from the time it was due,.on condition the appellee should pay four per centum per annum,in addition thereto, to which he consented; and on the —— day of •-they ascertained the amount of said four per centum interest, from the 14th of April, 1815, tobe $89, for which, deducting $18, which, as a part thereof, he had previously paid, he executed two notes, for which he had, after the death of Wallace, the obligee, been sued, on warrants by the appellants, arid compelled to pay the amount, with interest and costs. He also states that he had paid, of the debt replevied, $325; two hundred and fifty dollars, of which last sum were paid, in April, 1824, and the rem inder on the 12th oí June next thereafter. The bill concludes with a prayer *459 for an injunction against the judgment at law, and for relief generally. ..
The defendants answered, denying the allegations of the bill as to the illegal interest, but admit the two payments, amounting to $325; and that they had-sued on two small notes, the precise amounts of which, they did not recollect, executed by the appellee to their testator, and had collected them by executions.
The executrix acknowledged that her testator had loaned money to the appellee, but she did not know the amount loaned, what rate of interest - had been agreed upon or received.
They each deny any .knowledge of the considera» tiou,on which the note was founded, on which Ihey-had recovered judgment for $446 50,‘with interest and costs; and demand proof of every allegation of the bill, which they had not admitted.
Upon the hearing of the cause, the circuit court entered a decree in favor of Twyman, perpetually injoining the executor and executrix from the collection of the judgment and replevin bond, and that the appellee should recover his costs; to reverse which,, they prosecute this appeal».
The only deposition taken in the cause, was that of Joseph James, tue security in the replevin bond. The only points, therefore, to be decided, relate to the competency and effect of that.testimony..
The circuit court caused the following. entry to be made on the record: “The complainant brought into • court the sum of $446 30, the full-amount due 6n the replevin bond at law, and subject to the order of this court, and made nis motion for leave to take the deposition of Joseph James, his replevin securny,. presenting, at the same time, his affidavit, to show the materiality of his testimony; wherefore, it is ordered by the court, that the plaintiffs in the action at law,, have liberty to receive the said sum of money, subject to. the further order or decree of this court, and-that, in the mean time, Pnilemon B. Price take charge of said sum of money, as the receiver of this court,, giving his receipt for the same, to hold the same subject to the order of this court, or the receipt in full *460 of the plaintiffs at law; and that upon the payment, of the said sum of money, to the said receiver, as aforesaid by said, Twyman, leave be given the complainant in chancery, to take the deposition of the said Joseph James. It is further ordered that a copy of this order be served on the plaintiffs at law, before the taking of said deposition.”
.If A be a security in a re-plevy bond, he is not u competent witness to prove any fact tending; to invalidate the obliga tiers of said bond, the’ the principal may have paid the amount for which he íb responsible, to a receiver appointed by court. Such payment does not discharge the bond or release the security.
*460 In pursuance of this order, the appellee procured the receipt of said Price, in the following words:
“Received of James Twyman, by the hands of Barnabas Worland, special agent of said Twyman, the sum of $552 50, being the amount of a replevin bond and interest, executed by said Twyman, and Joseph James his security, to the executors of John Wallace, deceased,dated 9th April, 1822, for $641 20 cents, subject to the following credits: $250 paid 20th April, 1824, and $75, paid 12th of June, 1824. The aforesaid sum of money is received by me, under the order of the Scott circuit court, at the present term, in the suit in chancery, wherein the said Twyman is complainant and the executors of said Wallace are-defendants, to be safely preserved, or disposed of) agreeably to Said order or orders of said court. Given under my hand and seal this 7th of March, 1827. P. B. PRICE, (Seal.)”
And then proceeded to take said deposition.
On the trial, the appellee proved the payment of the sum in the receipt mentioned, to Price, the receiver appointed by the court, and the execution of the receipt.
The executors objected to the making of the order granting leave to take the deposition, and to the reading of it, which the court overruled; and they excepted to the opinion.
James; by his responsibility as security in the re-plevin bond, was clearly an incompetent witness, and we are not of opinion that the deposit by Twyman, of the money, in the hands of Price, under the order of the court, rendered him competent. It may be true, that the temptation to perjury might be thereby diminished; but be was not the less directly interested. The replevin bond remained unsatisfied, and the *461 delivery of the money to the receiver, did not, in the slightest degree, lessen his legal responsibility, if the receiver should act faithfully, and have the money ready to be disposed of, as the court might thereafter direct, to the extent of the amount paid, James would have been safe. But many casualties may be imagined, which would have still left him to pay a part or the whole of the sum replevied. Suppose that the receiver should have used the money and become insolvent, or have removed beyond' the jurisdiction of the court, or that he had losf'it by unavoidable accident, or had used it, honestly intending to return it, and had died, or even having it, should have refused to pay it over, according to an order which the court might enter up, what security would the payment to him, in any of these events, have afforded to James?
Tlle interest every eF’ fort by principal, to de-their” obligation is direct, tho’ 1° remo™^ almost impos-9ible-
Reieaseofre sponsibilify, 0f'n=‘,s-'entialto ofwitness!7
In an attempt to be released from the payment of money, a man bound as a surety, is as obviously interested as the principal. If his principal has an estate amply sufficient to meet the demand, lie would not feel the same solicitude for success, but his interest would be equally direct; and surely it cannot, witii the slightest plausibility, be contended, that an obligor in a bond, although he may be only surety, is an admissible witness, to prove payment, or other matter in discharge of it, because there may be but little danger of his ever having to pay it. Suppose A to be the surety of B for $10 due; that B is wealthy and dear of debt, no one could apprehend danger to A, from such responsibility; yet, in a contest like this, he could not be admitted as a witness.
To render him competent, it is not sufficient to show, that the danger to be apprehended is small, his responsibility must be released. In the case Collett against Wiley’s heirs; II. Bibb, 467, this court, in speaking of the inadmissibility’ of a witness, attempted to be introduced in a contest about the validity of a will, to prove the mental imbecility of the testator, where the witness was bound as surety for a defendant, in a suit instituted against him, by a devisee under the will, for property thereby devised to him, say, “that the witness was only a surety, and *462 might not, therefore, be compelled to pay the value-of the property to Burcham, (who was the devisee) cannot change the determination. As it is notin the powerof the court to estimate the degree of interest, a witness is capable of resisting; the law wisely rejects every one, whose right may be immediately affected by the determination, &c.”
. tifcommlt perjury, strong argu-thTadimssi-bility ofseou-rity as witness'
So long as the replevin bond, which is dated 9th' April, 1822, and is for $>641 20-remained undischarged, James’s responsibility remained. The money was not paid to the executors; they would doubtless have received it, if tendered in discharge of the bond; but the appellee carried $>446 30, into court, which was-erroneously calculated by the court, to have been the amount then due on the bond, not to be paid to the appellants, but to be subject to the order of the court. By the entry on the record, the appellants wrere “to have liberty to receive the said sum,” but subject to the furtherorder of the court. Had they received the money, it would not have been in discharge of the bond; but they might have been compelled to return, it at any moment, when ordered by the court. They were not bound to receive it in that way.
The sum of $562 50 was paid to the receiver, which was more than the sum then due; but he was directed by the court to receive $>446 30, and was bound by the order, to pay that sum only. The appellants did not even know when the deposition was taken, that the full amount due on the replevin bond, was in the hands of the receiver.
But we do not consider the amount important, for neither sum was tendered to the plaintiffs, nor does it appear from the record, that the order was served on them, as directed by the court.
But there are other strong reasons which may be urged against the competency of she testimony. To permit a surety in an obligation, to become a witness, whenever the principal will bring the money into COurt, and have it placed in the hands of a person appointed by the court, to be kept, subject to further order, would open a wide door to fraud and perjury, Jn this way, it would be in the power of every corrupt and unprincipled man, so situated, who could com *463 mand a sufficient sum, to swear himself clear óf responsibility, having furnished his principal with it, for the intended object. The only inconvenience to which he would be subjected, would be a loss of the use of his money fora short time. In cases of the insolvency of the principal, where the debts were large, the temptation would be, often, too strong to be resisted.
No authority has been cited, in argument, nor have we been able to fine] any supporting the propriety of admitting such testimony; and considering its tendency to vice and immorality so strong and direct, we shall not be the first to introduce.it.
But the testimony admitted did not warrant the decree. The witness says that he was with the ap-pellee, at the house of Wallace, when he gave his note for money, which he understood to be borrowed. He did not recollect well enough to say that $300 was the sum borrowed, but he thinks that was about the sum. Whatever the sum was, twelve per centum per annum as interest, was reserved on it. He understood, (from whom he does not say) that the note was renewed at the rate of ten per centum perannunij but whether for the whole sum or a part only, is not stated. The witness also borrowed money-from Wallace, at the same time, and paid the same interest. At one time, he and Twyman neglected to renew their notes, and Wallace promised, if they would pay the additional four per centum, it might stand so. When he renewed his note, Wallace told him, that Twyman had paid a part, or all of his surplus interest, but he could not say how mucin
He stated that he did not know what was the consideration of the note on which the judgment had been recovered. He did not know’, except from the conversation above detailed, between himself and Wallace, that Twyman had ever paid or secured to be paid, any illegal or usurious interest.
He had not heard of any other contract between Wallace and the appellee, being the brother-in-law of the latter, and intimatewitb him, he thinks he should have heard oí it, if any such had taken place. Henry, *464 the surety in the bond, was at the house of Wallace, at one time when witness was there.
Compl’nt. in chancery, must shew himself enti-t led to relie before it can be extended to him.
Petition fora re-hearmg. •
Wickliffe and Woolley, for appellants; Hoggin and Chinn, for appellee.
Although this testimony makes it probable, it is not at all satisfactory, to show that the note on which the judgment is bottomed, was for money' loaned. But taking that for granted; to calculate with any certainty, the amount of usurious interest, which it embraced, or which had been paid, was impracticable. Taking the deposition only, and putting out of view for the moment, the allegations of the bill, which are not evidence, an attempt to make the calculation would readily show, what uncertainty pervades the whole transaction. A complainant to authorize a decree in his favor, must prove that he is entitled to if, to (he extent of the relief granted. He must conform to the dictates of equity, before he can successfully demand them, to beexiended to him.
The decree of the circuit court must be reversed with costs and the cause remanded, with directions to dissolve the injunction with damages, and to dismiss the bill with costs.

The Counsel for appellee filed the following petition for a re hearing.

It is held by the opinion delivered in this case, that the complainant in chancery, cannot obtain the testi-molly 0f h;s injunction security, although he bring into court,the amount secured by the bond; and the consequences, are represented to be so flagrantly improper as to imply reprehension upon the attempt.
By the decision in Jack and Carnea), II. Marshall, the power of the court, to establish other personal security is denied, and the right to deposit money, in exoneration of the security, whose testimony is wanted, is denied in the present case. A failure of right, must consequently follow, and it is believed without a corresponding culpability. The principal may not, when he calls upon another to be his security, know or reflect on the materiality of his testimony. He may not even be apprised of the knowledge of the proposed security, or apprehend that the facts will *465 be denied. Or be may have at the time other witnesses more satisfactory, of whom casualty may deprive him. Yet from the consequences of this inadvertence, it now seems, that no power can. redeem , . 7 V 1 “im*
g~~r. — :— Petition tor a re-hearing.
The courts in some instances, by the adoption of rules, the legislature in others, by statutory enactment, require security from litigants in divers stages of the prosecution. As bail to the action; security for costs, for injunction, appeals, supersedtas^ &e. and as none of these are by stipulation of the parties, but the act of the court, such control has always been exercised over them/until the case of Jack and Car-neabas seemed best calculated to promote the purposes of justice.
Where insufficient security had been received, the court upon the suggestion of the party prejudiced by it, would require better security, and where the testimony of previous security was found necessary to the principal, others were substituted. Instances of this kind are frequent in England, and perhaps more so, in Kentucky, because every plaintiff, almost in the United States court, must give security for costs of suit. Nor did it occur to any, that in this modification of a judicial bond, the obligation of contract vims impaired. The power had never been denied, and it was ever held cause sufficient for the exercise of that power, that it was desired for the attainment of evidence. But after the discovery, that such control of the judicial bond was worse than the exercise of alaw making power, impairing the obligation of contract, it became necessary to adopt other measures, to exonerate securities, and obtain their evidence. And it is admitted by the counsel of Twyman, that in this, he experienced difficulties. The. opinion in the case of Jack and Carnea], had reference to the doctrines contained in that of Lapsley and Brashier, and of Blair and Williams. He did not understand the ob-. ligatio of the celebrated chief justice, nor the obli-gare ot his left hand associate; the ^binding” and the “tying up" of that learned tribunal, shed no light upon the subject to his mind. He had, it is true, heard something of a manual, in the technicals of the coun *466 -try, called “tying up,” but its use in science, were to him novel and incomprehensible. He must however confess that his client, a distinguished jurist, and ^‘sc'P'e the constitution, whose zeal in the new doctrines, was only surpassed by the stupidity of his counsel, and who was doubtless perfect master of the subject, essayed instruction most earnestly in this behalf. But unfortunately, Mr Twyman had been visited by an affliction which even deprived him of the power of articulation, and his counsel was compelled' to rely upon his own limited means. He supposed, thal this, oldigi tion could not operate more, than if it had been of stipulation between the parties, and that consequently, the obligation or duty imposed upon the security, would be satisfied by the payment of the money in the obligation, and the demand having been prosecuted to judgment, a payment of the money in court would be regular. But the money being payable, only on the'condition of the dissolution of the injunction,it did seem, that there could be no obligation of annexing such a condition to the order of deposit. This, however, was not done by the complainant. Notwithstanding the hardship of raising money, from the payment of which he had hoped to obtain exemption, yet as it was imputable to bis indiscretion, in committing his witness, he acquiesced. The deposit of the money, was the highest indemnity, known to the law, and only demanded in a very few instances; as upon the granting of a bill of review, &c. &c. In all others, personal security is held adequate. He conforms to his condition, raises the money, brings it into court, deposits it, and behold his adversary will not receive it. Wherefore? because he hopes to deprive the complainant of his testimony. The suppression of evidi ace is his object. And shall he prevail? The circuit judge decided in' the negative. And so did another court, subsequently in a similar-case. The-court made an order, that the money should he handed to one, selected for its safekeeping, with directions, that defendants might withdraw it, whenever they should apply; superadding the condition that they were to abide the final order of the-court. There was indeed no necessity for (his pro* vision, because it was implied. But it could not in- *467 yuré the defendants, because they were still getting the money, sooner than-(hey could ask it agreeably to the tenor of tiie bond, and they held it, under no ad ditional responsibilities, it was, as by the bond, to abide tne final order in chancery.. Here there was a deposit in the court, who pronounced (he judgment,, who required, ami held the bond, and who had the power to receive, and record satisfaction,., of the-utmost cent, secured under any slate of things, by fhe tenor of the obligation? Could James, the security, consider himself longer bound. If money be deposited in court, agreeably to the judgment of the court,, although it be lost by accident, by the act oí God,' or what is more improbable, by the embezzlement of. the judge, the defendant is released; Nay, if an ex- ■ ecution be levied, and the property or money be converted bv a faithless officer to his own use, insomuch,.. that not one cent, ever comes to the hand of the!, creditor, the debtor is discharged; and so justly, that cases are to be found, in which the proof of those facts not being clear at law, the chancellor interposed, and ' injoined further process. Surely, James entertained . no further apprehension, and gave his deposition free from influence.
Petition lor a re-hearing. *
Fi t>tion for a re-hearing,
I would respectfully say, that the evil suggested,, that the security might raise the money, deposit it in court, swear himself clear, and then resume his funds, . seems to comport neither with the true character of. naan, nor the vigilance of the law. It strikes at the root of all oral proof. Few men are so weak and unprincipled, as to attempt it. And with the opportunities afforded by cross examination, and a resort to other proof, the proof could certainly be exposed. If man he so prone, to guilt, opportunities and temptations for false swearing, equally irpposing, will occur, every day, and we must cease to confide in the testimony of witnesses. The law had not so considered it,. and our courts of modern date, have proved more in-; dulgent, and whenever there be doubt as to interest or influence they receive the testimony. Indeed it is emphatically said, that the suitor has a right in the testi nony of the witness, II. Starkie, 751. He has a just claim too, iu that of his adversary. Therefore, separate and distinct suits in chancery, are entertain’- • *468 ed, for the sole purpose of perpetuating the testimony of witnesses, or obtaining a discovery of the adversary himself. Absolute control has heretofore been exercised by our courts, over judicial bonds, for the important purposeof obtaining the truth, by qualifying the security to depose. Now, we are cut off with-, out an effort. I must admit, that the complainant was guilty of an indiscretion in the first instance, but not greater, most probably, than in any of the cases, where the court substitutes other securities, or where the chancellor found it necessary to coerce a discovery from tlie adversary, or order a perpetuation of proof. In all these, there is some want of circumspection. At least, it would seem the complainant has sufficiently atoned. He has incurred all the inconveniences of raising the money. And if the defendants have any just apprehension, because of the interest of the witness, the fault is now with them. If they had received the money, he would have stood free. But they would not,and most certainly, in this refusal, they acted under the influence of motives not to be countenanced. The money was all they could ask. It was the very tiling they wanted, but they would not take if, because that would not remove the alleged bias of the witness. Where the adversary will not concur, so far as necessary on his part, to restore the competency of a witness, the law will receive him. See II. Starkie, 759, 760. Nor can the appointment of a receiver impair this measure; the money was brought into court, the complainant would not take it, and of course, the court provides for its safe keeping. If to appoint a receiver, is in the power of the court, of which, I presume, none can doubt, it must follow that it was properly done. It may not be inferred, that the parties and the court, would have appointed one who did not merit the trust.
Petition for a re-hearing.
It may be, that in computing the amount, the officer of the court committed a mistake, but certainly, the sum deposited was sufficient, and we may presume, that when the defendants would make up their minds to receive the money, and would co-operate in the calculation, that error would have been corrected.
And it may be, that the record does not shew, (bat the defendant had notice before the complainant pro- *469 needed to take the deposition; jet no objection being made to the deposition on that score, the inference is, that the notice was given; for I can imagine no difíc-rence in this respect, between this notice, and one giving time and place, for faking the deposition. The presumption is in favor of the regularity of the proceedings.
Petition fora re-hearing.
If the deposition be competent, I would respectfully suggest, that as James proves, that he knew well of one transaction, and never heard of any other, between the parties, that he is the near kinsman and neighbor, and intimate with Twyman, and never heard of any' other, and believed from their mutual intercourse, he would have heard of it, if there had been other dealings between them, certainly, this should be held the transaction, to which James was privy, in the absence of all proof of any' other. But the answers admit, that this was the case of a loan rendered, and notes given for accruing interest. Why shall we doubt, either as to identity or usury? Notes for interest, and that only legal interest? This is improbable. Most unusual. In the case of Hunt and Martin, &c. an attempt was made to evade the justice of the case, by argument, that Hunt’s notes did not appear to be the same, given in purchase of the property. But it was successfully repelled, by the answer, that if there had been another transaction, and these notes arose out of that, the proof must come from those who would profit by it.
If there he difficulty, however, in this cause upon the points mentioned; nay. if they be against Twy-man, and the deposition of James must be rejected, or, being received, proves nothing, yet, upon the bill and answers, the counsel of the complainant cannot despair.
The answers are evasive, and that evasion is not the effect of accident or inadvertance. but of settled purpose. Mrs. Wallace was the wife of IV. Wallace, at the time this money was borrowed, and the notes renewed. She may be presumed to have been endued with ordinary' intelligence at least, for the contrary is not intimated, and she undertakes the duty of administratrix. She does not appear to lack in *470 interest for the concerns of her husband; nor to be-exempt from the curiosity of her sex. Three hundred dollars was no inconsiderable sum for her husband, a farmer in the country, to loan at one time. Nor was judge Twyman an inconsiderable personage. It is most probable that her ladyship would be prompted to know (and her husband had no motive to conceal it from her,) wherefore they were so often honored by the visits of Mr. Twyman; and that she did-understand from her husband, that he bad lent Mr. Twyman three hundred dollars, at an interest of ten per cent, (the condition of all these persons, taken into consideration,, surely the inference is a fair one, that the substantial of the transaction were known to her. The bill of Twyman, to which he has affixed his solemn affidavit, evinces a thorough conviction that Mrs. Wallace can say much about ft, and he proposed special investigations. Among others were the following questions: Hów much do they, or either of them believe was loaned? Did they, or either of them hear Wallace say, that more or less than three hundred dollars was loaned? The importance of a fair and substantial answer to those questions is evident. If we can ascertain how much money was-^loaned, we have information from which the excessive interest may be ascertained. Even the belief of the defendants will be followed by a disclosure of the reaspns upon which that opinion or- belief was founded.
Petition for 're-hearing. a
The first answers: Emmerson and Long know nothing of the loan or amount. Mrs. Wallace knows that Wallace did loan money, and held complainant’s notes for it, but does not know the amount originally loaned, or the rate of interest. “The defendants having answered every thing they know, of their own knowledge,” deny fraud, &c. &c. None can read and doubt that the defendants use the word know, as matter within their own particular cognizance, and not as opinion or belief, by information of others. If Wallace had told the defendants that the sum loaned, was $300, this would only be evidence of the fact, and not the fact itself. It conduces to prove the fact,' as the parties present themselves in court: whilst similar declarations of Twyman, although *471 equally true, are not evidence of tbe fact. Tbe defendants evidently understand this matier as I do, as is proved by the last clause in the answer: Although Wallace told them this, and they believe, yet his statement may not be true, and they do not know the fact. Consequently, the complainants excepted, the court sustained the exceptions, and a new answer is required. We know that it often happens, not by the inattention of counsel or parties, that the first answer is not full; and therefore, Í have looked upon our practice, in considering such answers as confessing the allegations of the bill, calculated to surprise, But here the attention of the parties is called to the subject; they are charged with evasion; are found guilty of it; and now we set down nothing more to inadvertance.
Petition for a re-henring.
Adhering then, to the questions taken, let us see if the second answers are not likewise evasive. How-much do they believe was loaned? Did they, or either of them hear Wallace say that more or less than $300 was loaned? Tbe bill stated that $¡300 was loaned; a belief founded upon communications from Wallace, would be equal in this cause, to the fact itself, yet none of them avow their belief. In the last answer, all the defendants believe it was a transaction for the loan of money, but although required to say how much, in their belief, they answer, how much they cannot say, and again, after repeating the belief, that it was a case of loan, they say-, how much interest they do not know. They can give their belief, where that would not' essentially affect them; but where their beliefwould prejudice, they again change their phrase; they cannot say; they do not know. They did not hear Wallace say, that more or less than $300, was not loaned. But if they, or rjrther Mrs. Wallace ever heard her husband, say that he loaned $300, she does not answer. They must understand the allegation and questions. The answers are penned with dexteHfy. Many questions are propounded; many answers are given. The purpose of the bill and interrogations is plain, yet they escape a response, and this deliberate evasion, would alone justify a decree agreeably- to the allegations f the bill.
Response to the petition
But combined with the deposition, and it is most respectfully insisted, no doubt of the fact remains.
A re-hearing is prayed.
Judge Buckner delivered the following response of the court! ' overruling the petition for a re-hearing.
The court has carefully re-examined the rgcord in this case, and considered the argument of the petitioner, by bis counsel, for a re-hearing of the cause. We do not deem it necessary, to enter into a second argument of the case, by way of response. It is sufficient to remark, that every fact, which we believe, can have an important bearing, on the decision of the controversy, have been stated in theopinion delivered. We do not concur with the petitioner’s counsel, either in relation to his narration of these facts, or as to the correctness of his view of the law.
There was no such acknowledgement made in either of the answers, respecting the rate of interest, as that assumed in the petition. Nor did the appellants refuse to receive the sum due on the replevin bond, in discharge of it. It was not tendered to them. Had it been paid, no object, intended to be effected, by the prayer of the bill, could have been secured. Had the money been paid, or tendered in discharge of the bond, and the appellants had refused to accept it, upon a bill, filed to recover the usury paid, the question of the competency of James’s testimony would ,have been presented under a different aspect. That however was not done.
It does not appear that the appellants were informed until the trial, that the necessary sum had been placed in the hands of the receiver.
The petition is overruled.